May it please the Court, I'm Daniel LaRue on behalf of the Plaintiff Appellant Kimerie Larmanger. Can you get the mic in front of you? I'm sorry. There you go. I'd like to reserve five minutes for my rebuttal, please. Okay. Basically, in this case, what we have is a situation where, on summary judgment, the facts are supposed to be taken in the light most favorable to the plaintiff. And given those facts, all reasonable inferences therefrom, that was not done in this case repeatedly. Instead, it was more like a trial by paper where evidence was weighed and inferences were made that were contrary to even agreed facts. Some of the examples of that ---- What do you have more than a coincidence of timing? I'm sorry? What do you have any more than a coincidence of timing? For ---- I just didn't see anything except that, I mean, there were these proceedings going on where your client was under consideration for discipline based on what appears to be real misconduct. And that was in the works for a long time, for a while, and it just so happens they came up with a decision shortly after she made her request, her leave request. So I don't understand what you have other than a coincidence of timing. If I may, Your Honor, I believe you're referring to the FMLA interference claim. With respect to that claim, the burden is a prima facie case only. There's no burden shifting, so ---- Well, I understand, but what do you have other than timing? Other than timing, I have ---- If you rely on timing alone, we'll have to consider whether that's enough. What I'm asking is do you have anything more? Yes, I do, Your Honor, and there's the sequence of events that occurred. And in particular, one of the sequence of events that occurred right before she was fired was a corrective action plan was put in place. There's evidence in the record that ---- Well, let's talk about the FMLA claim. I'm sorry? Let's talk about the FMLA claim. Yes, the FMLA claim. But this relates to the FMLA claim because I think one of the fundamental problems is that a jury doesn't have to find that the reason they say they fired her wasn't accurate. It only has to find that they took into account her inquiry or application for leave in the decision to terminate her employment. In this particular case, we have a situation ---- Yes, Your Honor, I do. The disciplinary proceeding against her had been ongoing for quite a while. There appears to have been real misconduct on her part. There's no ---- It didn't look trumped up to me. So it just so happens they make their decision and they announce their decision after she makes her FMLA request. Now, usually there's something else. Somebody says, hey, we got you or something like that. There's some connection other than timing. But if you have this process going on and it culminates in a disciplinary action, because it was started long before her request and just happens to end shortly after her request, what do you have that ties it to her request other than the accident of timing? She made a request for leave that went straight to her manager. So there's notice of the person that fired her, Mr. McGough, and that's on in January. It's still timing. And then there was a corrective action plan. They met to go over the corrective action plan three days before she filed her application. They didn't actually go over the action plan. That's undisputed. He was going to reschedule that. The corrective action plan, as represented by Kaiser, is a procedure to have the employee improve their performance. In this particular case, instead of rescheduling the corrective action and going forward with the plan, they scheduled a termination meeting after they got notice of the FMLA request on January 21st. So the issue is, as I pointed out in my brief, could they have taken that into account when they fired her, when they did? Did they cut off the correction and plot process because she filed an FMLA claim? That's really the issue. Did they take it into account? Not whether for the FMLA claim. And except for timing, do you have anything else to suggest a connection? Yes. The inference that they didn't carry out the plan after she got notice is reasonable. So you can make a reasonable inference in that, that they cut the plan off. I hear you. And didn't go through with it because they didn't want her to take lead. That's a reasonable inference that could be raised from the facts. And I think that's an important point about the FMLA claim, is that you give somebody a corrective action plan. You say that it's to improve their performance. You meet with them. You don't actually go over it. You get a request for FMLA leave three days later, and then instead of scheduling another corrective action meeting to actually discuss improving your performance, you terminate the person. I think in that situation, given the timing of events and the inference that can be drawn from not carrying out the actual plan, according to their own policy, a reasonable jury could find that they took it into account, even if they also could find that she was terminated for communication issues. That's the next point I would like to address, is that in this particular case, with respect to the retaliation claims, there are really only three statutes, whistleblowing under 199, retaliation for complaining about unlawful employment practices, and her participation in civil proceedings. In this case, the record repeatedly, the inferences were taken to the light that was most prevalent to the defendants in making the determinations of the fact. For example, in the record at 133 in plaintiff's response brief, they say Mr. Ferguson, who plaintiff complained about retaliation, was not part of the corrective action three process, and that that's undisputed. In fact, it is disputed. Their own VP of Rich Smith, Ferguson's manager, testified that Ferguson was handling the plan at ER 204. The third one, response three, their response page three, cites SER 89 for a performance review, and claims I ignore that plaintiff's communication score was a poor score. In fact, if you look at the actual evidence, which is at SER 89, the actual score is a 2.5 out of 5, which by the own scale falls in the average range. The third issue, another example, is response 14. SER 33 and 36 is cited as plaintiff's husband at the meeting with Mr. McGowan, where she discussed complaining about bullying, told Mr. McGowan that he knew people in high-ranking positions and would have his job. It cites to Mr. McGowan's notes in his bully submission. In fact, the stipulated agreed facts that the parties agreed to before the summary judgment contradicts that. At ER 120, agreed facts 65 and 67, it's agreed the husband stated he was going to contact Bully, Bureau of Labor and Industries. In fact, the judge in the case cited Mr. McGowan's submission to Bully as supporting that fact without taking into account what the agreed facts already were, and that's the order at ER 30. So in this particular case, the facts are repeatedly not taken in the light most favorable to the plaintiff. They are, in fact, taken in the light most favorable to the defendant. Even the framing of the issues was framed favorably to the defendant rather than the plaintiff. For example, in Plaintiff's Response Brief, page 33, it cites plaintiff's pared-down contentions, which actually came from the order at ER 48. Instead, it says the basis of the claims are terminating Enriquez. But the basis of the claim is actually, in the light most favorable to the plaintiff, terminating Enriquez for complaining about time card fraud. Everybody agrees it was time card fraud. The record shows it was time card fraud. Terminating Picoso. But it leaves out that the terminations were also for violation of unlawful actions. And it goes on and on, basically casting the issues that were set forth in the light most favorable to the defendant. This is inappropriate on a motion for summary judgment. In a motion for summary judgment, the defendant is supposed to point out what part of the claims don't have any evidence, when given in the light most favorable to the plaintiff. Here, that wasn't done. It wasn't done by the defendant. It wasn't done by the court. So in the end ---- Five minutes. Did you want to save that time for rebuttal? Okay.  Okay. We'll hear from the other side. May it please the Court, Counsel. Blake Robinson appearing on behalf of defendants. There are two general categories of claims here, as I think we've correctly identified. You have the whistleblowing, opposing unlawful discrimination claims on the one hand, and then the FIMLA interference claims on the other hand. The district court correctly granted summary judgment as to all claims. I'd like to start with the whistleblowing claims where we left off. And I think there are two flaws in plaintiff's case, both of which are fatal to her claim. First, the lack of causation and lack of evidence of pretext. And second, the fact that none of the allegedly protected activities are actually protected activities. Each of those are fatal to plaintiff's claim in their own right. Starting with causation, as I think Your Honor correctly pointed out with respect to the FIMLA claim, all plaintiff has here is issues of timing. Plaintiff has pointed to various things and essentially said, I engaged in a whole bunch of protected activities, I was disciplined, and then I was terminated. Therefore, summary judgment is improper. What about counsel's point that there was a corrective action plan proposed and then withdrawn? The corrective action three? The corrective action three plan that he was referring to? Yes. There are a couple of problems with that. First, it has to be tied to some sort of protected activity. And absent an actual protected activity that she engaged in, there is no claim. She has to prove, she has to have evidence that the reason that she was ultimately terminated was pretextual, that it wasn't her communication issues, it was something else. And to say that the fact that Mr. McGowan didn't follow through on the corrective action plan number three proves that somehow. She has to prove that the reason he didn't follow through was not because there was, was because she didn't engage in protected activity. But what you have here is undisputed evidence in the record that after he gave her the corrective action plan three, he continued to receive complaints from her coworkers that she was engaged, that she had poor communication skills, that the department was fractured because of that. It's plaintiff's burden under McDonnell Douglas not only to initially show causation, but after Kaiser and defendants have put forward a legitimate non-discriminatory reason, plaintiff has to come forward with specific and substantial evidence that that reason is pretextual. So after she got the original plan, you know, reprimand that led to the corrective action, in the interval she went on leave, apparently. I thought that's what he was arguing. And then so that would be the protected activity. And then before the corrective action plan could be implemented, you're saying that in that interval, McGowan got all these complaints from fellow employees. Correct. Mr. McGowan started receiving complaints, and it's undisputed that he was receiving these complaints about her communication skills starting in October. He issues her the level three corrective action in November. It's undisputed that November, December, January, he's continuing to receive complaints from her coworkers that her communication skills are causing serious problems in the department, and he makes the conclusion that this is irreparable. Irreparable damage has been harmed. We can't fix this, so there's no point in continuing with the process. I need to get rid of this person. There's no specific and substantial evidence that there is some other thing going on here. What about the suggestion, if I understand it from the appellant, that he was actually out harvesting these complaints to build a case? Does that help the appellant at all, if that were true? It still wouldn't help the case, her case, because she needs to come forward with specific and substantial evidence that the reason he was doing that was not because he never liked her. I think it's undisputed that he never thought she wanted this position. That's undisputed fact in this record. Yes, that he never wanted her in this job, didn't think she was qualified. Plaintiff has to come forward with specific and substantial evidence that it was a protected activity that she engaged in that was the reason he was doing this. Right, and on this record, a reasonable juror could not come to that conclusion, given everything else that happened. Again, not to mention the fact that putting aside the FIMLA OFLA, which we acknowledge that's a protected activity, aside from that, she simply did not engage in any protected activities. I'm not going to go through all of them, because there's a whole smattering that she says she engaged in, unless you have specific questions about them. But plaintiff has never explained, with respect to most of these, why they are protected activities. We explain in our brief why they're not, and I think if you actually look at the complaints she filed, she said she had no evidence of what they were, that they're simply not protected activities. So again, I think it's important to keep in mind the context here. What you have is an employee who, number one, it's undisputed that before any allegedly protected activity happened, the person who ultimately terminated her didn't like her. And then after that happens, you have undisputed evidence that an independent federal agency concluded that plaintiff violated federal law, violated HIPAA. Not only that, but during the course of the federal agency's investigation, they concluded that she lacked credibility in her responses to them as to what happened with the HIPAA violation. Not only that, the federal agency required Kaiser to issue her a corrective action. This is all undisputed evidence in the record. Okay. To sum up then, so you're saying that even if her supervisors, McGowan and the others, actually got together and they were acting in concert to get rid of this employee because of all of these complaints about her and the like, so there would be no question that there was an aggressive plan to build a case to terminate her, that they could do under normal employment circumstances unless any of the activities that she says are triggers were linked to some kind of protected activity, or the medical leaves or the Oregon protected whistleblowing. And that hasn't been established. Animosity, yes. Effort to build a case, yes. But it all falls apart because there's no nexus between that and a protected activity. That's correct. The baseline point is that Oregon is an at-will state, and they can hire for any reason they want as long as it's not a legal reason, and there's simply insufficient evidence of a causal connection between a protected activity on the one hand and the ultimate decision to give her the level to discipline her and then to ultimately terminate her. That's missing here. Counsel went through a list of facts that he says either were erroneous or were viewed by the district court in the light most favorable to your client. Do you have a response to his examples? Yes, and I don't know if I can give you a response with respect to each of them offhand. I think my preliminary comment would be just because the district court, even if the district court did that, if when viewed in the light most favorable to the plaintiff, that still doesn't establish the causation, the nexus here. And second, it still doesn't make up for the deficiency in her case that these weren't actually protected activities. But, for example, one example she gave was an alleged inconsistency with respect to this bully proceeding. Mr. McGowan, who was at the meeting, submits a declaration stating that the plaintiff's husband was angry and said, I'm going to have your job. I know people high ranking in the federal government. He says that's inconsistent with the stipulated facts. If you look at the stipulated facts that he cites, it's not inconsistent with it. The stipulated facts, say, give an account of the meeting. It's not a total account of the meeting. The mere fact that plaintiff was unwilling to stipulate that these statements were made doesn't make, doesn't mean that there's evidence in the record that that didn't happen. The uncontradicted evidence in the record is that those statements were made. There's no, as far as I'm aware, there's no declaration from plaintiff, no declaration from her husband saying that didn't happen. You only have one account of the story. That's Mr. McGowan's, and he said he did. That's not an inconsistency. Regardless, it doesn't solve the causation problems and the protected activity problems. Okay, thank you. Moving to the FMLA and OFLA claims, I don't really have a whole lot to add here. I think we understand your position. Okay. I just want to highlight something very briefly, and that's that it's undisputed that plaintiff was never denied the, was never prohibited from taking leave. She was never criticized for taking leave. No one complained about her taking leave. That's undisputed. This is a mere temporal proximity case. That's not enough on this record. Unless you have other questions, I will sit down. Thank you. Thank you, Your Honor. We have about a little less than five minutes for rebuttal. Yes, I'd like to address a couple of things that were said. One is the nexus issue. In this circuit, what the plaintiff has to do is undermine the reason that they claim they fired her. In this case, there's only one reason they claim they fired her. It's communications issues. So any argument about what may have happened? No, I mean, there was also those HIPAA violations. They don't claim they fired her for those HIPAA violations. They only claim that she's ---- That was the infraction, and the question is, are they going to give another chance? Are they going to have an actual plan and decide there was these communication issues that exacerbated the problem, made it hopeless? But the reason, the actual misconduct was going into people's files in violation of federal law. I don't believe that's their position, and I don't believe that's the position that they took in their briefing. Their briefing position was that it was communication issues. And, in addition, the representations that they made to the federal government were that my client didn't do anything wrong with respect to the HIPAA issue, and then when it was favorable to them to argue that my client did something wrong, they've done that. Maybe you weren't listening to the same argument I was, but I thought that's what the opposing counsel was arguing. I agree.  The opposing counsel was arguing. She commits this violation. She's found to have violated federal law. They think about giving her an improvement plan of some sort, and then they get all these communications complaints, and they say, well, it's sort of hopeless. There's no point in trying to fix this because, in addition to whatever they had, I don't think they ever took the position that they were firing her just for the communication problems. The position is that that was a pretext for her termination, and the reason it was is because the very person she complained about, Mr. Ferguson, was the person behind almost all of the corrective actions, and even, in fact the ---- You don't dispute that there was a ---- that she committed HIPAA violations? Is it undisputed that she violated? You don't dispute that she committed HIPAA violations? I do. I think it's disputed in the record. They made contradictory statements to the federal government about that issue, that she didn't, and that the disciplining of Ms. Enriquez was proper. Sure, the OCR found a different reason, but that is not the reason. That's the first time they've claimed that's the reason they fired her in their briefing. They don't claim that's the reason they fired her. The district court didn't claim that's the reason they fired her. The sole reason they claimed they fired her is communication issues, and that's the corrective action level three plan that was created a year after that incident almost. It does not even mention the HIPAA issue at all. So maybe we can get clarification from counsel whether they are or not. I read it the way you did. Okay. Thank you. In addition, the reason, all we have to do is show it's unworthy of credence, their explanation, and the way that that is. It is set forth in plaintiff's reply brief at page 11 through 12, and it's supported by the record that Mr. Ferguson, the HR manager she complained about in 2009, retaliating against her, was involved in every step of the process, including responding to her grievance with Mr. McGowan and writing the response to her complaint to the Bureau of Labor and Industries after the fact. You have the person she accuses of retaliating against her writing the response to the administrative agency she's complaining to. Their own VP of Human Resources said that was a violation of Kaiser policy. Given that the person who she complained she was retaliating against was, and their issues of fact was involved in every step of the process with regard to her discipline, with respect to the communication issues, a reasonable jury could find that it's unworthy of credence. You have the very person accused of retaliation conducting the continued retaliation and then conducting the involving investigation and responding to the bully complaint. That should make a reasonable jury suspect of what's in the record. With respect to the communications issues, there are no declarations in the record from any of these people that allegedly had problems with plaintiff. It's all secondhand from Mr. McGowan. Mr. McGowan's notes, some e-mails. There are no, nothing supporting the actual, what the actual person said. Therefore, that's another reason they could find it's unworthy of credence. Thank you, Your Honor. Thank you. Did I get the answer to the question about the HIPAA point? Mm-hmm. Are you, is termination based on HIPAA violation? I think Kaiser's position is that you can't look, that you look at the entire employment record and the communication issues that she was ultimately terminated for. It's like the straw that broke the camel's back. They don't look at that in isolation. You look at her entire employment record. Okay. Thank you. Okay. Thank you.
judges: Davis, Kozinski, Fisher